**Lawrence J. ROSEN, Plaintiff,**

v.

**TRANSX LTD., Defendant.**

Civ. No. 4–92–870.

United States District Court,
D. Minnesota,
Fourth Division.

March 26, 1993.

Chris H. Berndt, Kimberly K. Westerholm, and Warchol, Berndt & Hajek, Minneapolis, MN, for plaintiff.

John J. McGirl, James C. Ohly, and Doherty, Rumble & Butler Professional Assn., Minneapolis, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on the defendant's motion to dismiss. Based on a review of the file, record and proceedings herein, the court denies the defendant's motion and remands this matter to state court because the court lacks subject matter jurisdiction over the case.

## BACKGROUND

The factual record and legal analyses set forth by the parties are scant. Nevertheless, the court will reconstruct the factual background and ferret out the legal arguments and applicable law so that it can analyze the motion before it.

Defendant Transx Ltd. ("Transx") employed plaintiff Lawrence J. Rosen ("Rosen") as a truck driver. On September 13, 1991, Rosen refused to drive a truck that Transx assigned to him because he believed the brakes were defective. Transx did not offer Rosen another truck to drive. Instead, Transx instructed Rosen to go home if he refused to drive the truck originally assigned to him. Rosen states that went home because he believed that federal or state regulations prohibited him from driving a truck that he believed was unsafe or did not satisfy applicable safety standards. On September 16, 1991, Transx fired Rosen because he failed to complete his September 13, 1991, shift.

A collective bargaining agreement ("agreement") governed the parties' employment relationship. The agreement contains a grievance and arbitration procedure. Article 5 of the agreement, entitled "Grievance Procedure," provides, in part, that:

> If ... [the parties] are not able to resolve the grievance [using the informal grievance process set forth in § 5.1 of Article 5], and if the grievance involves an interpretation of an application of the Collective Bargaining Agreement, either party may request arbitration of the grievance. The request for arbitration must be made within three (3) working days from the time the parties determine that the grievance cannot be satisfactorily resolved.

Agreement § 5.2 (attached to Ohly Aff.). Rosen contends that he availed himself of the informal grievance procedure, but his request for a grievance hearing was denied. Rosen proffers no evidence of filing a grievance or the date his alleged request for a grievance hearing was denied. In addition, there is no evidence that Rosen attempted to avail himself of the arbitration procedure set forth in the agreement.

On August 3, 1992, Rosen filed this action in Minnesota state court. Rosen raises three claims. First, Rosen contends that Transx wrongfully discharged him in violation of Minnesota's whistleblower statute, Minn.Stat. § 181.932 ("Count I"). Rosen argues that Transx was prohibited from firing him because he suspected, in good faith, that driving the truck would have violated federal or state laws and regulations. Second, Rosen contends that Transx failed to permit him to review his personnel file in violation of Minn. Stat. § 181.961 *et seq.* ("Count II"). Third, Rosen contends that Transx's actions constitute wrongful discharge under common law ("Count III").

Transx removed Rosen's cause of action to the federal district court on September 11, 1992. Transx now moves to dismiss Counts I and III pursuant to Rules 12(b) and 19 of the Federal Rules of Civil Procedure and to remand Count II to state court for resolution. Transx proffers three arguments in support of its motion to dismiss:

1. Rosen is barred from asserting the claims set forth in Counts I and III because he failed to file his claims before the expiration of the statute of limitations applicable to his claims;

2. The claims set forth in Counts I and III are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), because resolution of those claims would require the court to interpret the agreement;

3. Rosen failed to arbitrate his wrongful discharge claims as required by the Federal Arbitration Act ("Arbitration Act"), 9 U.S.C. §§ 1–16.[1]

Transx failed to specify in its moving papers, supporting memoranda or at oral arguments which subsection of Rule 12(b) of the Federal Rules of Civil Procedure it relies on. Despite Transx's omission, the court will analyze Transx's arguments and determine the standard that must be applied in this matter. Transx also failed to make any showing in its memoranda in support of its arguments concerning Rule 19 of the Federal Rules of Civil Procedure. Transx stated that it was moving under Rule 19 in its Notice of Motion and Motion to Dismiss, but left the court to divine its argument.[2] Because Transx fails to set forth any argument regarding Rule 19, the court will not address any application that Rule 19 might have to the issues before the court. The court notes that even if it had addressed the application of Rule 19 in this case, the court would reject Transx's argument because no part of Rosen's action is premised on a failure-to-represent claim.

■ Rosen captioned his submission in response to Transx's motion as a motion. *See* Clerk of Court's File, Docket Entry No. 7. If the court were to treat the submission as a motion, it would not consider the submission because Rosen did not comply with Local Rule 7.1(b)(1) in filing it. Local Rule 7.1(b)(1) provides:

No motion shall be heard by a district judge unless the moving party delivers one copy ... [of the necessary moving papers] to opposing counsel and an original and two copies to the Clerk of Court at least 28 days prior to the hearing....

Rosen filed his submission on February 11, 1993, *see* Clerk of Court's File, Docket Entry No. 7, less than twenty-eight days prior to the February 26, 1993, hearing on this matter. Rosen, however, did comply with the terms of Local Rule 7.1(b)(2) in filing his submission. That rule provides:

Any party responding to the motion shall deliver one copy of the ... [responsive papers] to opposing counsel and an original and two copies to the Clerk of Court at least 9 days prior to the hearing....

Local Rule 7.1(b)(2). Transx has not alleged that it will suffer prejudice if the court considers Rosen's submission as a timely response to its motion. Accordingly, the court will consider Rosen's submissions as a response to Transx's motion because it finds Transx will suffer no prejudice by its doing so.

Rosen contends that Transx misconstrued his complaint, arguing that it is premised solely on two Minnesota state statutes, the whistleblower statute, Minn.Stat. § 181.932, and the employee personnel record disclosure statute, Minn.Stat. § 181.960 *et seq.* Armed with that construction, Rosen contends that the court need not interpret the agreement to resolve the dispute before it and, therefore, federal labor law does not preempt his state law claims. Rosen also contends that the six-year statute of limitations applicable to the whistle blower statute applies to his claims, not the statute of limitations applicable to federal labor law. Rosen thus contends that the court should deny Transx's motion to dismiss and remand his state law claims to state court.

---

1. Transx raises its arbitration argument in its reply brief. Because Rosen had an opportunity to address this defense at oral arguments, the court shall consider it. Although Transx failed to so state in its moving papers or supporting memoranda, the court notes that under Transx's analysis, the failure-to-arbitrate defense is applicable to each of Rosen's claims, not just the wrongful discharge claims.

2. Transx apparently contends that one reason why the court should dismiss Count III is that it sets forth a failure-to-represent claim against Rosen's union and Rosen failed to join the union as a defendant in his case.

Rosen also moves the court for permission to amend his complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Rosen seeks to make his complaint more clearly reflect that his claims are based solely on state law. Rosen's proposed amended complaint is almost identical to his original complaint except that Count III is deleted. Because the court determines that it lacks subject matter jurisdiction over this action, the court will not rule on Rosen's request that the court permit him to amend his complaint. However, the court will construe Rosen's request to amend as a voluntary dismissal of his claim as set forth in Count III. The court notes that if it were to consider the merits of Count III, it would dismiss that count under § 301 of the LMRA.

## DISCUSSION

 Transx moves to dismiss the claims asserted against it pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, but fails to specify which subsection it relies on. The court determines that Transx raises only jurisdictional issues in its motion and that subsection 1 of Rule 12(b) is therefore the applicable subsection. Rule 12(b)(1) "[j]urisdictional issues, whether they involve questions of law or of fact, are for the court to decide." *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir.1990) (citation omitted). Transx may support a Rule 12(b)(1) motion with affidavits and other documents. *Id.* at 730 (citation omitted). The court may weigh the evidence submitted in support of the Rule 12(b)(1) motion and use that evidence to evaluate the merits of the motion. The Eighth Circuit stated in *Osborn* that:

> [T]he ... court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material

facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* (footnote omitted from the original) (quoting *Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). Once the evidence is submitted, the court may "not simply rule that there is or is not enough evidence to have a trial on the issue." *Id.* (citation omitted). The court must decide whether it has jurisdiction. *Id.* "The only exception is in instances when the jurisdictional issue is 'so bound up with the merits that a full trial on the merits may be necessary to resolve the issue.'" *Id.* (quoting *Crawford v. United States,* 796 F.2d 924, 929 (7th Cir.1986)). With this standard at hand, the court will consider Transx's motion to dismiss.

Rosen contends that the court should remand his action because his claims are based only on state law, there is no other basis on which the court could exercise subject matter jurisdiction over this matter and therefore, the court lacks subject matter jurisdiction over this matter. Although Transx never so states, it apparently contends that the court can exercise federal question jurisdiction over this matter.

 A case may be removed from a state court without regard to the citizenship of the parties if it contains a claim or right arising under the Constitution, treaties or laws of the United States. 28 U.S.C. § 1441(b).[3] The "well-pleaded complaint rule" governs whether federal question jurisdiction exists. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). That rule "provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* This exception, known as the "complete preemption doctrine," provides that when the preemptive force of a federal statute is "extraordinary," it "converts an ordinary state

---

3. 28 U.S.C. § 1441(b) provides, in part, that: Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Deford v. Soo Line R.R. Co.*, 867 F.2d 1080, 1084 (8th Cir.) (quoting *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989); *see also Brown v. Holiday Stationstores, Inc.*, 723 F.Supp. 396, 398 (D.Minn.1989) (citations omitted) ("The fact that [a] plaintiff's complaint does not allege any claims pursuant to any federal law ... does not necessarily preclude removal if the claim falls in an area of state law which has been 'completely preempted.'" (citation omitted)). "This exception prohibits a plaintiff from defeating removal by failing to plead necessary federal questions in a complaint and allows a defense for federal preemption as a basis for removal." *Id.*

It is undisputed that Rosen's complaint on its face presents no federal question. Thus, to determine whether it can exercise subject matter jurisdiction over this removed matter, the court must determine whether this matter involves an area of state law that has been completely preempted. As the Eighth Circuit stated, the "fundamental question is whether ... [§ 301 of the LMRA or the Arbitration Act, the two areas of federal law on which Transx relies,] so pervasively occupy the field of ... [labor contract disputes] that a competing state law claim necessarily invokes federal law." *Id.* 867 F.2d at 1084–85.

Transx contends that § 301 of the LMRA preempts Rosen's discharge claim, thereby permitting the court to exercise jurisdiction over that claim. If the court determines that § 301 preempts Count I, Transx apparently contends that the court should decline to exercise supplemental jurisdiction over Count II and remand that count to state court. In the alternative, although Transx fails to so state, it apparently contends that the Arbitration Act preempts each of Rosen's claims, thereby permitting the court to exercise jurisdiction over those claims. Transx cites no case law in support of its latter alternative.

### 1. Preemption under the LMRA

■ Transx contends that Rosen's wrongful discharge claim is preempted by § 301 of the LMRA. Section 301 provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter or between any such labor organizations may be brought in any district court of the United States having jurisdiction of parties without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 preempts "state law claims where resolution of the state law claim 'substantially depends' on the interpretation of terms or provisions of" the agreement. *Hanks v. General Motors Corp.*, 906 F.2d 341, 343 (8th Cir.1990) (citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985)). If the state law claim is not "inextricably intertwined" with consideration of the terms and provisions of the agreement, that claim is not preempted. *Id.* (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988)). A state law claim is not necessarily "inextricably intertwined" even though it involves "analysis of the same set of facts as a claim arising under the ... agreement...." *Id.*

■ Rosen's discharge claim is premised on Minnesota's whistleblower statute. That statute provides that:

An employer shall not discharge ... or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(a) the employee, ... in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer ...

. . . . .

(c) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.

Minn.Stat. § 181.932 subd. 1(a) and (c). A discharge claim premised on Minnesota's

whistleblowing statute is analyzed under the three-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *See e.g., Parten v. Consolidated Freightways Corp.*, 923 F.2d 580, 584 (8th Cir.1991); *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 572 (Minn.1987); *see also Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 444 (Minn.1983) (finding that three-part procedure of shifting production burdens set out in *McDonnell–Douglas* is applicable to retaliatory discharge claims). Under that analysis, Rosen must first establish a prima facie case of retaliatory discharge. If Rosen demonstrates that the adverse action may have been motivated by discrimination, the burden of production shifts to the defendant to articulate a nondiscriminatory reason for the discharge. *Parten*, 923 F.2d at 584; *Phipps*, 408 N.W.2d at 572. If Transx meets that burden, Rosen must show, by a preponderance of the evidence, that the employer's legitimate reason for discharge was merely a pretext for intentional retaliation. *Parten*, 923 F.2d at 584; *Phipps*, 408 N.W.2d at 572.

Transx apparently argues that adjudicating Rosen's discharge claim necessarily implicates the collective bargaining process because Rosen failed to grieve his alleged discharge using the grievance procedure set forth in the agreement. The Supreme Court, analyzing a similar argument in defense of a retaliatory discharge claim, found that § 301 did not preempt a unionized employee's state law action based on Illinois's tort of retaliatory discharge for filing a worker's compensation claim. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988). In ana-

lyzing whether preemption was appropriate, the Supreme Court considered the elements of retaliatory discharge under Illinois law:

> To show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the act or to interfere with his exercise of those rights.

*Id.* (citations omitted). The employer argued that the agreement between the parties contained a provision precluding discharge except for "just cause" and that if the retaliatory discharge action went forward, the state court would be deciding the same issue as would an arbitrator, implicating the concerns expressed by the Supreme Court in *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).[4] *Id.* 486 U.S. at 402–408, 108 S.Ct. at 1877–1882. The Supreme Court rejected the employer's argument, finding that the retaliatory discharge action states "purely factual questions," each of which "pertains to the conduct of the employee and the conduct and motivation of the employer." *Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882. The Supreme Court further found that "[n]either of the elements requires a court to interpret any term of a collective bargaining agreement." *Id.* The Supreme Court thus found that the state law remedy was " 'independent' of the collective bargaining agreement in the sense of 'independent' that matters for section 301 preemption purposes: resolution of the state law

---

4. In *Lucas Flour,* the Supreme Court stated:

 The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under *two or more systems of law* which might someday be invoked in enforcing the contract....

 The importance of the area which would be affected by separate systems of substantive law

makes the need for a single body of federal law particularly compelling. The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace. State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy.... [W]e cannot but conclude that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules.

*Lucas Flour,* 369 U.S. at 103–04, 82 S.Ct. at 576–77.

claim does not require construing the collective bargaining agreement." *Id.*

The court finds that the Supreme Court's reasoning in *Lingle* is applicable to the § 301 preemption matter before it. Analysis of the factors needed to establish a claim for retaliatory discharge under Minnesota's whistleblower statute only requires analysis of factual questions and requires no analysis of any provisions or terms of the agreement. The possibility that Rosen could have raised his claim utilizing the grievance procedure set forth in the agreement does not compel a finding that preemption is warranted. *Hanks,* 906 F.2d at 345 (citation omitted); *Brown,* 723 F.Supp. at 403. The court thus concludes that Rosen's discharge claim pursuant to Minnesota's whistleblower statute, Minn.Stat. § 181.932, is not preempted by § 301 of the LMRA, 29 U.S.C. § 185(a). The court thus cannot exercise subject matter jurisdiction over this removed matter on the basis of § 301.

## 2. Preemption under the Arbitration Act

In the alternative, Transx contends Rosen cannot pursue his claims without first exhausting his administrative remedies under the agreement, in particular arbitration. In support of its argument, Transx cites the Arbitration Act, 9 U.S.C. §§ 1–16, and *Gilmer v. Interstate/Johnson Lane Corp.,* —— U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Although Transx fails to so state, it apparently contends that the complete preemption doctrine applies to claims involving the Arbitration Act. Transx cites no caselaw suggesting that the complete preemption doctrine applies to claims involving the Arbitration Act.

 The court determines that it need not resolve whether the Arbitration Act provides it with a basis on which to exercise subject matter jurisdiction because the Arbitration Act does not apply in this case. The Arbitration Act provides:

A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or

in equity for the revocation of any contract.

9 U.S.C. § 2. The Arbitration Act, however, excludes from the operation of § 2 "contracts of ... any ... class of workers engaged in ... interstate commerce." 9 U.S.C. § 1. "Collective bargaining agreements are 'contracts of employment' within the meaning of this exclusion." *United Food and Commercial Workers v. Safeway Stores, Inc.,* 889 F.2d 940, 944 (10th Cir.1989) (citation omitted); *see also Herring v. Delta Airlines, Inc.,* 894 F.2d 1020, 1023 (9th Cir.), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1319, 108 L.Ed.2d 495 (1990); *Bacashihua v. U.S. Postal Serv.,* 859 F.2d 402, 404–05 (6th Cir.1988) (citation omitted).

It is undisputed that the agreement governing the employment relationship between Rosen and Transx was a collective bargaining agreement. Further, Rosen was employed as a truck driver and the court finds that truck drivers are members of a "class of workers engaged in interstate commerce." *Cf. Herring,* 894 F.2d at 1023 (agreement involving airline pilots excluded); *Safeway Stores,* 889 F.2d at 944 (agreement involving grocery store worker excluded); *Bacashihua,* 859 F.2d at 404–05 (agreement involving postal service employee excluded). That Rosen's employment with Transx may not have taken him across Minnesota's boundaries is of no import to the court's analysis.[5] The exclusion pertains to classes of workers, not individual workers. *See Bacashihua,* 859 F.2d at 405 ("the concern ... [is] not whether the individual worker actually engaged in interstate commerce, but whether the class of workers to which the complaining worker belonged engaged in interstate commerce" (citation omitted)). Accordingly, the court finds that pursuant to § 1 of the Arbitration Act the agreement governing the employment relationship between Rosen and Transx is excluded from the dictates of § 2 of that law. Transx's reliance on *Gilmer* to the contrary is misplaced. *Gilmer* did not involve an arbitration clause contained in a collective bargaining agreement between an employee and employer. Rather, the arbitration clause at issue was contained in a

---

**5.** The record is devoid of any evidence regarding whether Rosen travelled to other states.

**1372**

securities registration application. *Gilmer*, —— U.S. at ——, n. 1, 111 S.Ct. at 1652 n. 1. The Supreme Court, distinguishing a securities registration application from an employment agreement, held "that § 1's exclusionary clause does not apply to Gilmer's arbitration agreement." *Id.*

### 3. Statute of Limitations

Transx contends that Rosen is barred from pursuing his wrongful discharge claim because he failed to comply with the statute of limitations applicable to that particular claim. The court will not resolve that argument because no basis exists by which it can exercise subject matter jurisdiction over Rosen's claims. Thus, whether Rosen timely filed his wrongful discharge claim is an issue left for the state court to resolve.

### 4. Remand

When a case is removed to federal court, the court must determine whether it has subject matter jurisdiction over the case. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

 Transx bears the burden of establishing that the court has jurisdiction over the removed action because it invoked the removal statute. *Bor–Son Bldg. Corp. v. Heller*, 572 F.2d 174, 181 n. 13 (8th Cir.1978) (citations omitted). The court has determined that the two bases on which Transx argues it could have exercised jurisdiction, § 301 of the LMRA and the Arbitration Act, do not apply in this case. The court therefore finds that Transx has failed to meet its burden. The court is thus compelled under § 1447(c) to remand this matter to state court.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Transx's motion to dismiss is denied; and

2. Rosen's cause of action is remanded to state court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**